## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                                              No. CV 11-0037 MV/LAM
                                                                CR 03-0477 MV

ERIC LAMONT JOHNSON,

        Defendant/Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on Defendant/Movant (hereinafter "Defendant") Eric Lamont Johnson's Section 2255 motion [*Doc. 1*],[2] filed January 12, 2011, motions for extensions of time to file supplemental pleadings and to stay the case [*Docs. 11, 17, 19, 21,* and *22*], and motion for discovery [*Doc. 20*]. Plaintiff/Respondent (hereinafter "the Government") filed a response [*Doc. 18*] to the Section 2255 motion on April 14, 2011, but did not file responses to any of the other motions. Accordingly, all references to "motion" herein are to the Section 2255 motion.

United States District Judge Martha Vázquez referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 15*]. Having considered the parties' submissions, relevant law, and the record in this case and

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2] Unless otherwise noted, all referenced documents are from Case No. CIV-11-0037, and all page number references are to the electronic page numbers listed in the PDF header at the top of the document in the CM-ECF docket.

in Defendant's underlying criminal case contained in Case No. CR-03-0477, the undersigned recommends, for the reasons set forth below, that the claims raised in Defendant's ***Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*** *(Doc. 1)* be **DENIED** and that Case No. CIV-11-0037 be **DISMISSED with prejudice**.

Defendant raises six ineffective assistance of counsel claims against three of his appointed attorneys in his criminal case [*Doc. 1* at 4-7 and 11-13, ]; three prosecutorial misconduct claims (*id.* at 9-10 and 19-21); and a claim that the District Court erred in not allowing him to withdraw his plea (*id.* at 17-18).

### Factual and Procedural Background

On March 11, 2003, a federal grand jury returned an indictment against Defendant charging him with: (1) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possession with the intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and (3) possession of a firearm during or in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). [*Doc. 2*, filed in Case No. CR-03-0477].

Federal Public Defender Joseph Gandert was appointed to represent Defendant in his criminal case. [*Doc. 6*, filed in Case No. CR-03-0477]. On August 14, 2003, Mr. Gandert filed a motion to suppress evidence ([*Doc. 19*, filed in Case No. CR-03-0477]), and, on January 27, 2004, the Court held a hearing on the motion ([*Doc. 40*, filed in Case No. CR-03-0477), and denied the motion on February 25, 2004 ([*Doc. 53*, filed in Case No. CR-03-0477]). On September 24, 2003, Mr. Gandert filed a motion to withdraw as counsel, stating that "[t]he attorney-client relationship has deteriorated to such an extent that defense counsel cannot effectively represent Mr. Eric Johnson in this case." [*Doc. 24*, filed in Case No. CR-03-0477, at 1]. Two days later, Mr. Gandert filed a

motion to withdraw his motion to withdraw as counsel, stating that "Defendant, Eric Johnson, has indicated that he wants Joseph W. Gandert, Assistant Federal Public Defender to continue to represent him as counsel in his case." [*Doc. 25*, filed in Case No. CR-03-0477, at 1]. Defendant's trial was set for May 17, 2004 ([*Doc. 66*, filed in Case No. CR-03-0477]), and, on April 21, 2004, Mr. Gandert filed a second motion to withdraw as counsel, stating that "[t]he attorney-client relationship has broken down to such an extent that defense counsel cannot effectively represent Mr. Johnson." [*Doc. 73*, filed in Case No. CR-03-0477, at 1]. The Government opposed the motion, stating that it would be prejudiced by any further delays, especially because one of its witnesses was activated by the National Guard and might be unavailable at a future date. [*Doc. 74*, filed in Case No. CR-03-0477, at 1-2]. The Court held a hearing on the motion to withdraw as counsel, and entered an order granting the motion. [*Docs. 79* and *86*, filed in Case No. CR-03-0477]. The Court next appointed Douglas Couleur to represent Defendant ([*Doc. 81*, filed in Case No. CR-03-0477]), and rescheduled his trial for August 16, 2004 ([*Doc. 98*, filed in Case No. CR-03-0477]).

On July 14, 2004, Defendant filed a *pro se* motion asking that Mr. Couleur be dismissed as his counsel for failing to conduct an investigation Defendant asked him to do, for failing to answer Defendant's phone calls, for failing to discuss a plan for the trial, and for dissuading witnesses from testifying for Defendant at the trial. [*Doc. 101*, filed in Case No. CR-03-0477, at 1]. The Court vacated the trial ([*Doc. 102*, filed in Case No. CR-03-0477]), held a hearing on the motion ([*Doc. 106*, filed in Case No. CR-03-0477]), granted the motion ([*Doc. 104*, filed in Case No. CR-03-0477]), and next appointed Ann Steinmetz to represent Defendant ([*Doc. 105*, filed in Case No. CR-03-0477, at 1]). The Court reset Defendant's trial for October 18, 2004. [*Doc. 107*, filed in Case No. CR-03-0477]. On September 22, 2004, at a status conference, Defendant stated that he

wanted to proceed *pro se*, which the Court permitted him to do with Ms. Steinmetz acting as stand-by counsel.  [*Doc. 115*, filed in Case No. CR-03-0477, at 2].

On October 21, 2004, Defendant pled guilty to Count III of the indictment pursuant to a plea agreement.  [*Docs. 144* and *147*, filed in Case No. CR-03-0477].  At the change of plea hearing, Defendant asked for Ms. Steinmetz to be reinstated as his counsel, and the Court agreed to do so. [*Doc. 251*, filed in Case No. CR-03-0477, at 3].  On November 16, 2004, Defendant filed a *pro se* "Notice of termination of appointment of counsel and request for other counsel on stand-by basis" ([*Doc. 149*, filed in Case No. CR-03-0477]), and on that same day filed a *pro se* motion to withdraw his guilty plea ([*Doc. 150*, filed in Case No. CR-03-0477]).  On July 22, 2005, the Court denied Defendant's motion to withdraw his guilty plea.  [*Doc. 156*, filed in Case No. CR-03-0477].  On September 29, 2005, Defendant filed a motion to substitute attorney Ron Sanchez for Ms. Steinmetz as counsel for Defendant ([*Doc. 161*, filed in Case No. CR-03-0477]), which was granted on November 14, 2005 ([*Doc. 163*, filed in Case No. CR-03-0477]).

On March 22, 2006, Mr. Sanchez filed a stipulated motion on Defendant's behalf asking the Court to order a psychological evaluation to determine Defendant's competency, which the Court granted on April 7, 2006.  [*Docs. 170* and *173*, filed in Case No. CR-03-0477].  On July 26, 2006, the Court ordered that Defendant undergo the psychiatric evaluation at the Bureau of Prisons hospital.  [*Doc. 175*, filed in Case No. CR-03-0477].  The psychiatric evaluation report dated November 14, 2006, concluded that "there is no objective evidence to indicate that Mr. Johnson is currently suffering from a mental disease or defect that would substantially impair his present ability to understand the nature and consequences of the court proceedings brought against him, or substantially impair his ability to properly assist counsel in a defense."  [*Doc. 176*, filed in Case No. CR-03-0477, at 9].  A competency hearing was scheduled for January 26, 2007 ([*Doc. 178*, filed in

-4-

Case No. CR-03-0477]), but was vacated when Mr. Johnson swallowed a razor blade the morning of the hearing and was taken in for surgery ([*Doc. 179*, filed in Case No. CR-03-0477]).

On March 13, 2007, Mr. Sanchez filed a motion to withdraw as Defendant's counsel, stating that Defendant had requested that Mr. Sanchez terminate his representation of him and that Defendant "refuses to discuss or meet with [Mr. Sanchez]." [*Doc. 181*, filed in Case No. CR-03-0477]. The Court held a hearing on the motion on March 21, 2007 ([*Doc. 187*, filed in Case No. CR-03-0477]), and denied the motion the next day ([*Doc. 185*, filed in Case No. CR-03-0477]). On April 5, 2007, Defendant filed an unopposed motion to substitute attorney Frederick Jones for attorney Ron Sanchez ([*Doc. 188*, filed in Case No. CR-03-0477]), which the Court granted on April 9, 2007 ([*Doc. 190*, filed in Case No. CR-03-0477]).

On May 3, 2007, the Court entered a stipulated order appointing a clinical psychologist to conduct a second psychological examination of Defendant, and that the cost of the evaluation would be paid for by Defendant. [*Doc. 191*, filed in Case No. CR-03-0477]. The second evaluation did not take place apparently because Defendant disputed the scope of the evaluation because he thought it should be to determine his competency as of the time he entered his guilty plea in 2004. *See* [*Doc. 192*, filed in Case No. CR-03-0477, at 2]; *see also* [*Doc. 194*, filed in Case No. CR-03-0477]. On January 3, 2008, pursuant to the Court's order, Mr. Jones filed a motion on Defendant's behalf for a competency evaluation and hearing to determine specifically Defendant's competency at the time he entered his guilty plea on October 21, 2004. [*Doc. 195*, filed in Case No. CR-03-0477]. The Government opposed the motion and asked the Court to order the psychological evaluation to determine whether Defendant was presently able to proceed with his sentencing. [*Doc. 196*, filed in Case No. CR-03-0477, at 9]. On February 15, 2008, the Court ordered a retrospective

competency evaluation to determine Defendant's competency at the time of his guilty plea, as well as to determine Defendant's present competency. [*Doc. 197*, filed in Case No. CR-03-0477, at 4-5].

After several delays and the appointment of a new psychologist, a second evaluation of Defendant was conducted on July 11, 2008. *See* [*Doc. 215*, filed in Case No. CR-03-0477].[3] The psychologist concluded that Defendant was competent when he entered his guilty plea on October 21, 2004 (*id.* at 14) and was currently competent to proceed in his case (*id.* at 11). On December 17, 2008, the Court held a competency hearing and found that Defendant was competent at the time he entered his plea and was competent to proceed with sentencing. [*Doc. 218*, filed in Case No. CR-03-0477, at 2]. On December 22, 2008, the Court held a sentencing hearing and found that Defendant was a career offender ([*Doc. 246*, filed in Case No. CR-03-0477, at 32]), and sentenced Defendant to 180 months in prison followed by 3 years of supervised release ([*Doc. 224*, filed in Case No. CR-03-0477, at 2-3]). Defendant appealed his conviction to the Tenth Circuit Court of Appeals ([*Doc. 225*, filed in Case No. CR-03-0477], and the Tenth Circuit affirmed his conviction on April 27, 2010 ([*Doc. 256-1*, filed in Case No. CR-03-0477], reported at *United States v. Johnson*, No. 09-2024, 376 Fed. Appx. 858, 2010 WL 1685860 (10th Cir. April 27, 2010) (unpublished)). Defendant also filed a motion for reconsideration of his sentence, arguing that he was erroneously classified as a career criminal ([*Doc. 231*, filed in Case No. CR-03-0477]), which the Court denied ([*Doc. 235*, filed in Case No. CR-03-0477]).

---

[3]Despite the Government's assertion to the contrary (*see* [*Doc. 18* at 6]), the 2008 evaluation was filed with access by "Case Participants," which means that counsel for the Government has access to it (*see* [*Doc. 215*, filed in Case No. CR-03-0477]).

Defendant timely filed his § 2255 motion on January 12, 2011.[4]   The Court reviews Defendant's *pro se* pleadings under a liberal standard.   *See United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007).   However, the Court may not act as his advocate in this proceeding.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## Discussion

In order to be successful with his motion, Defendant must show any of the following: (1) that his sentence violates the "Constitution or laws of the United States," (2) that the sentencing "court was without jurisdiction to impose such a sentence," (3) that "the sentence was in excess of the maximum authorized by law," or (4) that his sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255; *see United States v. Kell*, No. 03-6223, 105 Fed. Appx. 976, 978, 2004 WL 1690373 (10th Cir. July 29, 2004) (unpublished).  If the Court finds that any of these circumstances exists, the Court must vacate the underlying judgment and set it aside, and either grant a new trial, correct the sentence, or release Defendant.  28 U.S.C. § 2255(a)-(b).

In his motion, Defendant describes seven claims; however, for ease of discussion, they are separated, as follows, into ten claims.  Defendant raises six ineffective assistance of counsel claims: (1) that defense attorney Mr. Gandert failed to investigate the underlying traffic stop that led to Defendant's arrest in order to prepare for Defendant's suppression hearing; (2) that  third defense attorney Ms. Steinmetz told Defendant that he would receive a sentence of 60 months and did not

---

[4]A motion under 28 U.S.C. § 2255 is timely if it is filed within one year from the date the conviction becomes final.  *See* 28 U.S.C. § 2255(f)(1).  The United States Supreme Court has held that, "[f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."  *Clay v. United States*, 537 U.S. 522, 525 (2003).  The Tenth Circuit dismissed Defendant's appeal on April 27, 2010, and he had 90 days from that date, or until July 26, 2010, in which to file a petition for writ of certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13(1).  Since Defendant filed his motion within one year of that time, on January 12, 2011, his motion is timely.

tell Defendant that he could be found to be a career criminal; (3) that Ms. Steinmetz failed to make the Court aware that Defendant told her on the day of his plea that he was hearing voices; (4) that fifth defense attorney Mr. Jones failed to file objections to Defendant's presentence report, where the presentence report failed to note that Defendant had not been present at his sentencing for a California conviction, which conviction triggered the career offender enhancement of Defendant's sentence; (5) that Mr. Jones failed to ask certain questions of the psychologist at Defendant's competency hearing regarding Defendant's alleged mental illnesses; and (6) that in the post-conviction motion to correct Defendant's sentence, Mr. Jones failed to state that he and Defendant had spoken to Defendant's California attorney who agreed to sign an affidavit showing that Defendant's conviction in the California case was illegal. [*Doc. 1*. at 4-7, 11-13].[5] Defendant raises three claims for prosecutorial misconduct: (1) that the prosecutor, Mr. Ortega, incorrectly told Defendant that his sentence would be capped at 60 months; (2) that an unnamed prosecutor tampered with evidence in Defendant's case; and (3) that an unnamed prosecutor interfered with the issue of Defendant's competency at the time of his plea and caused Defendant's counsel at the time, Mr. Romero,[6] to withdraw from representing Defendant. *Id.* at 9-10, 19-21. Finally, Defendant claims that the Court erred by not allowing him to withdraw his guilty plea. *Id.* at 17. Defendant

---

[5] The Court notes that on page 14 of Defendant's motion he includes an "Addendum to Ground Four," stating that "the courts need to especially be aware of the fact that the defendant and counsel F. Jones had a rare relationship," that "counsel wanted to be payed [sic] with drugs[,] namely cocaine," that Defendant agreed to this and "was able to get some of the product to counsel," but "defendant was unable to completely fulfill the agreement." [*Doc. 1* at 14]. Defendant states that after his sentencing he "asked counsel about unpreparedness, motions objections, and briefs that should have either been filed or executed," and Mr. Jones' "response to the defendant was: 'you get what you pay for.'" It appears that these statements are provided by Defendant as background and he does not appear to be making a claim for ineffective assistance of counsel based on these allegations. Therefore, the Court does not consider these statements to be a separate claim for ineffective assistance of counsel.

[6] Even though Defendant states in his motion that he had retained Joe Romero as his counsel in "the later part of 2004" [*Doc. 1* at 21], the docket does not reflect that Mr. Romero ever represented Defendant at any time in his criminal case.

asks the Court to allow him to "file objections to presentence report/with draw [sic] from plea/trial/dismiss charges/reduce sentence to 60 months." *Id.* at 27.

## A. Ineffective Assistance of Counsel Claims

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, Defendant must show that (a) his attorney's performance was deficient because it fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance. *Id.* at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* To demonstrate unreasonable performance, Defendant must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Defendant must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. The Court does not have to address both prongs of the *Strickland* standard if Defendant makes an insufficient showing on one of the prongs. *Id.* at 697.

### *1. Mr. Gandert's Alleged Failure to Investigate Underlying Traffic Stop*

Defendant's first claim is that his counsel, Mr. Gandert, "failed to investigate to prepare for [Defendant's] suppression hearing." [*Doc. 1* at 4]. Defendant states that he told Mr. Gandert that there was no traffic stop since Defendant was already stopped when the officer pulled up. *Id.* Defendant also states that he "asked counsel to measure the distance of the traffic stop falsely alledged [sic] by the officer," because there was a 2-1/2 to 3 minute glitch in the officer's car camera, and the officer testified that "he cut the camera off because it took him that long to catch

-9-

up to [Defendant]." *Id.*  Defendant contends that if his counsel had investigated this issue, it would have shown that the officer gave perjured testimony. *Id.* at 1-2.  Defendant also states that the officer "stated his camera was off because he lost sight of [Defendant's] car," and that the "officer was out side [sic] his car ingaged [sic] in traffic stop as [Defendant] passed him." *Id.* at 2.  The Government responds that there is no basis for this claim because Mr. Gandert adequately researched, briefed and argued the motion to suppress evidence. [*Doc. 18* at 9-10].

The Court finds that this claim fails because Mr. Gandert adequately investigated and prepared for Defendant's suppression hearing.  Mr. Gandert filed a motion to suppress the evidence seized in the traffic stop that led to Defendant's arrest, stating that the traffic stop at issue was invalid because Officer Nick Ramos omitted and altered facts from his initial report in order to write the criminal complaint. [*Doc. 19*, filed in Case No. CR-03-0477, at 7].  Mr. Gandert provided detailed argument about the many inconsistencies between the initial report and the complaint narrative, and argued, *inter alia*, that Office Ramos' inconsistencies show that he is not to be believed and that the stop was likely pretextual and not based on reasonable suspicion and, therefore, invalid. *Id.* at 7-10.  Furthermore, at the suppression hearing, Mr. Gandert questioned Officer Ramos extensively about the traffic stop and the time lapse in the officer's car camera. [*Doc. 252-1*, filed in Case No. CR-03-0477, at 55 to 60, and *Doc. 252-2*, filed in Case No. CR-03-0477, at 1-28].  In the Court's order ruling on the motion to suppress, the Court addressed Defendant's challenges to "the initial justification fo the stop, the reasonableness of [Defendant's] detention both before and after Officer Ramos issued him a citation and the length of his detention." [*Doc. 53*, filed in Case No. CR-03-0477, at 11].  In addressing Defendant's contention that the traffic stop was pretextual, "the Court found Officer Ramos' testimony as to his initial observations and as to the use of his radar detection equipment to be consistent and credible," and that

-10-

Officer Ramos had reasonable suspicion to stop Defendant.  *Id.* at 15-16.  Defendant's claim that

Mr. Gandert was ineffective for failing to investigate the distance Officer Ramos traveled to where

Defendant was stopped and about the gap in time in the car camera fails because Defendant does

not provide evidence that this information would have affected the Court's ruling on the suppression

motion.  Moreover, Mr. Gandert did raise the issue of the time lapse and argued that there were

inconsistencies between Officer Ramos' report and the criminal complaint.  The Court finds that

Mr. Gandert's performance did not fall below an objective standard of reasonableness on this issue

and that Defendant has failed to show how the outcome of his case would have been different if

Mr. Gandert had investigated the distance Officer Ramos traveled before the traffic stop.  Therefore,

the Court finds that this claim should be denied.

### *2.  Ms. Steinmetz' Alleged Failure to Tell Defendant He Faced Career Offender Status*

Defendant next argues that Ms. Steinmetz' assistance was ineffective because she told

Defendant that his sentence would be 60 months, that Defendant's sentence "would not be affected

by the guidelines," and that an increase above 60 months "was impossible."  [*Doc. 1* at 6-7].

Defendant states that "at no time was [he] ever made aware that [he] could face career offender as

a result of the Plea agreement," and that "[o]ne week after signing the Plea[,] counsel told [him] over

a phone conversation that as a result of the Plea [he] would face career criminal in the State of

Alabama [but] [n]ever once did she state anything about New Mexico."  *Id.* at 7.  The Government

states in its response that this claim is belied by the record because the plea agreement states that

only the sentencing court could determine his sentence, that  Defendant signed the plea agreement

which asserted that Defendant had read the agreement and understood it, and Defendant was

questioned about the plea agreement at the change of plea hearing and agreed that he had read and

understood it and had not been promised anything outside the plea agreement.  [*Doc. 18* at 10-12].

-11-

The plea agreement states that Defendant could not be certain what sentence he would receive. *See* [*Doc. 147*, filed in Case No. 03-0477, at 2-3, 6, and 8] (stating at page 6: "There have been no representations or promises from anyone as to what sentence the Court will impose."). Moreover, Defendant testified at the change of plea hearing that no one had made any promises to him outside the plea agreement to induce him to plead guilty, that his counsel had gone over the potential penalties he faced and that he understood those penalties, and that his counsel had gone over the federal sentencing guidelines and how they might apply to his case and that it would be up to the sentencing judge to determine his sentence.  [*Doc. 251*, filed in Case No. CR-03-0477, at 9-12].  Defendant provides no support for his statement that Ms. Steinmetz promised him a 60-month sentence or that, even if she had, he could have relied on such promises pursuant to the terms of his plea agreement and the change of plea proceedings.  The Court, therefore, finds that this claim is without merit and should be denied.  *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."); *United States v. Gigley*, 213 F.3d 509, 517 n.3 (10th Cir. 2000) (rejecting claim that plea was not knowing where plea agreement outlined the possible consequences and where court ensured through inquiry that plea was made freely and voluntarily, and stating that "[e]ven if [counsel's] predictions had been inaccurate, that would not constitute ineffective assistance of counsel under these circumstances"); *United States v. Mendez-Zamora*, No. 06-3160, 193 Fed. Appx. 796, 798, 2006 WL 2468311 (10th Cir. Aug. 28, 2006) (unpublished) (rejecting claim that guilty plea was not knowing where "at the change of plea hearing, the District Court specifically verified that [the defendant] understood that his guilty plea did not limit the court's discretion to impose a sentence up to the statutory maximum"); *United States v. Gibson*, No. 02-6108, 59 Fed. Appx. 305, 307,

-12-

2003 WL 329249 (10th Cir. Feb. 14, 2003) (unpublished) (rejecting claim that guilty plea was not knowing where evidence showed, *inter alia*, that defendant was informed by the court and by his attorney of the potential ramifications of the plea).

### *3.  Ms. Steinmetz' Alleged Failure to Tell Court Defendant Heard Voices*

Defendant next contends that Ms. Steinmetz was ineffective because she failed to tell the Court that Defendant told her "on the day of plea . . . in the presence of probation officer that [Defendant] hear [sic] voices."  [*Doc. 1* at 7].  Defendant states that "[d]uring competency hearing Dr[.] [F]oote stated he did'nt [sic] believe inmate/defendant [had] delusions at time of Plea because delusions did'nt [sic] come into record until 2 years later."  *Id.*  The Court finds that this claim is without merit because Defendant fails to provide any support that he told Ms. Steinmetz that he heard voices.  In addition, Defendant fails to provide support that the outcome of his case would have been any different if Ms. Steinmetz had told the Court that Defendant told her that he heard voices.  In his competency evaluation, Dr. Foote concluded that Defendant was competent on the day of his plea agreement for several reasons.  *See* [*Doc. 215*, filed in Case No. CR-03-0477, at 13-14].  Dr. Foote rejected Defendant's account that, at the time of his plea, he was suffering from a delusion in which he believed he was the star of a reality television show.  *Id.* at 13.  Dr. Foote stated that "in the context of [Defendant's] psychiatric history, such a delusional process would be highly unlikely," because "[t]he delusions that Mr. Johnson reports are more typical of a mood disorder in that they involve grandiose elements which accompany such disturbances of both activity level and thought."  *Id.*  Dr. Foote further noted that "a review of the legal documents [Defendant] produced at the time of the plea would be inconsistent with [Defendant's] account," because "[a] television actor would lack motivation to prepare detailed legal documents because the cameras were only in the courtroom" and "the legal documents that Mr. Johnson prepared at that time . . .

-13-

were well written and logical, containing no evidence of the thought and mood disorder that would have been a necessary predicate to a delusional disorder of the sort Mr. Johnson reports." *Id.* at 14. There is no support for Defendant's contention that, had Dr. Foote been aware that Defendant had allegedly stated that he had heard voices at the time of his plea, that Dr. Foote's conclusion would have been different. The Court, therefore, finds that this claim is without merit and should be denied.

### 4. *Mr. Jones' Alleged Failure to File Objections to Defendant's Presentence Report*

Next, Defendant states that Mr. Jones' legal assistance was ineffective because he failed to file objections to the presentence report. [*Doc. 1* at 11]. Specifically, Defendant states that Mr. Jones should have filed objections to information about Defendant's conviction in California for being a prisoner in possession of a weapon because Defendant was not present during the sentencing in that case. *Id.* Defendant further states that Mr. Jones "lied to the Court" when he said that he went over the presentence report with Defendant. *Id.* Defendant states that the California case "was used to trigger the career offender" designation which resulted in Defendant receiving a longer sentence. *Id.* The Government states in response that, in the California case, Defendant entered a no contest plea on October 2, 2002, for which he received a stipulated sentence of eight months. [*Doc. 18* at 13]. The case was remanded for re-sentencing to a recommended two-year "time-served" sentence due to an apparent miscalculation of the original sentence, and Defendant was not present for the re-sentencing and his California attorney waived his presence. *Id.* The California judge re-sentenced Defendant, and a different California attorney sought to withdraw Defendant's 2002 no-contest plea or to get the case dismissed, but the California "Superior Court has declined to do either since Johnson is still in federal custody." *Id.* According to the transcript of the hearings in Defendant's California case, the judge there indicated that she could not go

-14-

forward on the issue because Defendant was not present, so she told Defendant's counsel to ask for a hearing when Defendant was available or figure out if a waiver of appearance would be allowed. [*Doc. 1-2* at 46-47].  The record does not show that Defendant followed up on this issue with the California court.  The Government contends that the length of Defendant's sentence is a moot point because Defendant's conviction in the California case was properly counted by his probation officer and the Court "because it is a felony conviction that qualifies as a predicate offense for the application of the career offender guideline."  *Id.*

The Court finds that Mr. Jones was not unreasonable in failing to raise the issue of Defendant's California conviction in objections to the presentence report because there is no evidence that the outcome of Defendant's case would have been any different if he had done so. Defendant does not deny that he entered the no-contest plea in the California case and provides no grounds that the conviction in that case should not have been counted in his criminal case in this Court other than because he was not present for his re-sentencing.  As explained in the Court's order denying Defendant's motion for reconsideration or correction of his sentence [*Doc. 235*, filed in Case No. CR-03-0477, at 2-3], Defendant was sentenced as a career offender pursuant to the U.S. Sentencing Guidelines Manual § 4B1.1(a) (2009) because: (1) he was at least 18 years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction, Possession of a Firearm During or in Relation to a Drug Trafficking Crime, is a felony that is a crime of violence or a controlled substance offense; and (3) he had at least two prior felony convictions for crimes of violence, including the conviction in the California case for Prisoner in

-15-

Possession/Carrying a Weapon.[7]  For purposes of the career offender enhancement, a "crime of violence" is defined as:

>    (a)    [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
>    (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
>    (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S. Sentencing Guidelines Manual § 4B1.2(a) (2009).  Whether Defendant was sentenced to 8 months or 22 months for his California conviction is irrelevant in this case because the crime for which he was convicted was *punishable* by imprisonment for a term exceeding one year.  *See* U.S. Sentencing Guidelines Manual§ 4B1.2 cmt. n.1 (2009) ("'Prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year . . . regardless of the actual sentence imposed."); *see also United States v. Hernandez-Garduno*, 460 F.3d 1287, 1293 (10th Cir. 2006) (explaining the difference between the definition under the sentencing guidelines of "aggravated felony," which requires that the defendant actually serve a prison term of at least one year, and that of "felony," which requires only that the defendant be convicted of any offense punishable by imprisonment for a term exceeding one year, "irrespective of the actual sentence imposed").

        Defendant fails to make any showing of a likelihood that the California court would have allowed him to withdraw his plea or that he would not have been convicted on the felony charge anyway, so that the conviction would not be used to find him to be a career criminal.  The Court,

---

[7]Defendant has not alleged that these prior convictions were not crimes of violence and the District Judge appropriately found that they were crimes of violence.  [*Doc. 235*, filed in Case No. CR-03-0477, at 2-3].

therefore, finds that Mr. Jones was not ineffective for failing to raise a meritless argument.  *See*

*United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (holding that counsel's failure to raise

meritless issue in underlying criminal case did not constitute ineffective assistance).

Nevertheless, the Court notes that Mr. Jones did raise this issue at Defendant' sentencing

hearing ([*Doc. 246*, filed in Case No. CR-03-0477, at 6-7]), and that the Court considered his oral

objections to the presentence report and found that the California conviction should be counted in

its finding that Defendant was a career offender (*id.* at 32-33).  In addition, in the Court's order

denying Defendant's motion for reconsideration or correction of sentence, the Court rejected the

argument Defendant made at his sentencing hearing that he would not have pled guilty to being a

prisoner in possession of a weapon or accepted the 2-year term of imprisonment at the re-sentencing

if he had known it could be used to enhance his sentence in the present criminal case.  [*Doc. 235*,

filed in Case No. CR-03-0477, at 1-2].  The Court stated that this "argument did not support a

finding that the facts stated in paragraph 27 of the [presentence report][8] were erroneous or that the

underlying conviction was not properly considered a crime of violence for purposes of determining

Defendant's status as a career offender."  *Id.* at 2.  The Court further finds that Defendant's

contention that Mr. Jones was ineffective for telling the Court that he had reviewed the presentence

report with him when, according to Defendant, he had not done so, also fails.  This is because, even

assuming Defendant's counsel did not review the presentence report with him, that is irrelevant

since Mr. Jones made the same argument at the sentencing hearing that Defendant is making here

about the California conviction and its effect regarding Defendant's career offender status, so

---

[8]It is the Court's practice to not file confidential presentence reports on the Court's CM-ECF docket, and neither party provided a copy of the presentence report in their submissions.  However, the Court notes that at Defendant's sentencing hearing, paragraph 27 was described as stating that Defendant pled *nolo contendere* to the offense of being a prisoner in possession/carrying a weapon based on an agreement that he receive no more than eight months imprisonment.  *See* [*Doc. 246*, filed in Case No. CR-03-0477, at 6].

-17-

Defendant fails to show any prejudice by his counsel's allegedly deficient performance. For these reasons, the Court recommends that this claim be denied.

### 5.  *Mr. Jones' Alleged Failure to Ask Psychologist About Defendant's Mental Illnesses*

Defendant next claims that Mr. Jones was ineffective because he failed to test the Government's case during his competency hearing. [*Doc. 1* at 12]. Defendant states that his counsel did not ask Dr. Foote about "the effects the mental illness has on a person[,] how it controls and[/]or influences thoughts and decisions made by one who suffers from such illnesses," nor did his counsel ask Dr. Foote "if such delusion [of being in a reality TV show] were consistant [sic] with mental illness suffered by the defendant." *Id.* The Government responds that Mr. Jones adequately represented Defendant at the competency hearing and that the Tenth Circuit rejected this same argument when Defendant raised it in his direct appeal. [*Doc. 18* at 14-15].

The Court finds that this claim is without merit because Mr. Jones did ask Dr. Foote in his cross-examination during the competency hearing about Defendant's mental illness history and its effects on Defendant's behavior. *See* [*Doc. 245*, filed in Case No. CR-03-0477, at 36-39] (asking Dr. Foote to explain what Defendant's mental illness diagnosis means and whether those symptoms were seen by Dr. Foote in this case). As the Tenth Circuit noted when they rejected this claim in Defendant's direct appeal, Mr. Jones "cross-examined Dr. Foote, often referring to Dr. Foote's report to question his conclusions of competency," "elicited Dr. Foote's opinions that [Defendant] was not malingering or exaggerating his symptoms and that [Defendant[ could be competent one day and not competent the next," and "questioned Dr. Foote on [Defendant's] past psychotic behaviors, such as suicide attempts and delusions, to suggest that [Defendant] was not competent." *United States v. Johnson*, No. 09-2024, 376 Fed. Appx. 858, 861-62, 2010 WL 1685860 (10th Cir.

April 27, 2010) (unpublished).  For these reasons, the Court finds that Mr. Jones' performance was not objectively unreasonable and recommends that this claim be denied.

### 6.  *Mr. Jones' Alleged Failure Regarding Post-Conviction Motion to Correct Sentence*

Finally, Defendant argues that Mr. Jones was ineffective for failing to state in the post-conviction motion to correct Defendant's sentence [*Doc. 231*, filed in Case No. CR-03-477] that Defendant and Mr. Jones had spoken with Defendant's attorney in his California case (Mr. Willoughby), and that Mr. Willoughby "stated he never represented [Defendant] in any case after [Defendant] was sentenced in the year 2002 and that the 2004 resentencing was illegal and Mr. Willoughby stated that he would sign an affidavit [to that effect]."  [*Doc. 1* at 12-13].  Defendant contends that "Mr. Jones never made the Court aware of this fact[;] neither did he use the courts [sic] power to order Mr. Willoughby to testify in a [sic] evidentiary hearing."  *Id.* at 13.  The Court finds that this claim is without merit because Defendant fails to explain how Mr. Willoughby's testimony would have changed the outcome of his present case.  In its order on Defendant's post-conviction motion to correct his sentence, the Court rejected the argument that Defendant would not have pled guilty in the California case because the "argument did not support a finding that the facts stated in paragraph 27 of the [presentence report] were erroneous or that the underlying conviction was not properly considered a crime of violence for purposes of determining Defendant's status as a career offender."  [*Doc. 235*, filed in Case No. CR-03-0477, at 2].  Having Mr. Willoughby testify that he thought the resentencing was illegal would not change the fact that Defendant still had that conviction on his record and it was properly used to enhance his sentence.  The Court recommends that this claim be denied.

## B. Prosecutorial Misconduct Claims

### 1. Prosecutor Allegedly Told Defendant That His Sentence Would be Capped at 60 months

Defendant claims that the prosecutor in his criminal case, Mr. Ortega, stated that Defendant would be sentenced to 60 months under the plea agreement, and that is why Defendant agreed to plea. [*Doc. 1* at 9-10]. Defendant states that "[d]uring every court proceeding [the] prosecuting attorney [Mr. Ortega] vehemently expressed the governments [sic] position was only [f]or 60 months," and that the plea agreement "expresses the recommendation is and will be for 60 months." *Id.* at 10. Defendant states that when asked by the Court at the sentencing hearing about the Government's recommendation, Mr. Ortega stated "between 60 month's [sic] and 262 months would be a range to look at." *Id.* The Government responds that Mr. Ortega "never guaranteed a 60-month sentence" and did not act in bad faith to obtain Defendant's guilty plea. [*Doc. 18* at 17]. The Government points out that the plea agreement stipulates that the Government would recommend a sentence at the minimum term of imprisonment under the statute of conviction, and that "[a]t the time [Defendant] entered his change of plea, it appeared that [Defendant] was facing a 60-month sentence on the statute of conviction, but it was not completely clear that [Defendant's] criminal history would result in a career offender designation." *Id.* at 17-18. The Government states that the pre-sentence investigation revealed that Defendant had "two crimes of violence" which led to the career offender recommendation by the probation officer, and Defendant thus faced a guideline imprisonment range of 360 months to life in prison. *Id.* at 18.

"Where the Government obtains a guilty plea [that] is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea." *United States v. Bullcoming*, 579 F.3d 1200, 1205 (10th Cir. 2009) (citation omitted) (citation omitted). In considering a plea agreement, courts "look

to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of the promise at the time of the entry of the guilty plea." *Id.* (citation omitted).  Additionally, applying general principles of contractual interpretation, courts "construe any ambiguities against the government as the drafter of the agreement."  *Id.* (citation omitted).  To determine whether the government abided by the agreement, courts "evaluate the record as a whole."  *Id.* (citation omitted).

The Court finds that Defendant's claim that the Government breached the plea agreement is without merit.  While the plea agreement states that the Government "will recommend that the defendant be sentenced to the minimum term of imprisonment required by the statute of conviction, that being 18 U.S.C. § 924(c)" ([*Doc. 147*, filed in Case No. CR-03-0477, at 6], it also states that "no one can predict with certainty what guideline range will be applicable in this case until after a presentence investigation has been completed and the Court has ruled on the results of that investigation" (*id.* at 2).  The agreement further states that "[t]here have been no representations or promises from anyone as to what sentence the Court will impose."  *Id.* at 6.  At the sentencing hearing, Mr. Ortega explained that the presentence investigation revealed offenses which triggered the career offender guideline range, which required a 360-month minimum sentence under the guidelines; however, he stated that he was not advocating the 360-month sentence.  [*Doc. 246*, filed in Case No. CR-03-0477, at 13-15].  While Mr. Ortega did not recommend to the Court the 60-month sentence under 18 U.S.C. § 924(c), he and the Court discussed that this would have been the Government's recommendation had the career offender designation not been triggered, and how the career offender guideline application to Defendant's case put both the Government and the Court in a "difficult position."  *Id.* at 24-25.  Mr. Ortega stated to the Court that a range of between 60 and 262 months would be appropriate for the Court to look at, but he was aware that the Court was

limited in the amount departure it could give Defendant under the guidelines.  *Id.* at 24.  In addition,

Mr. Ortega was the one who brought up and encouraged Defendant to accept responsibility in order

to further reduce his sentence from 360 months to between 262 and 327 months, which indicates that

Mr. Ortega was trying to help Defendant.  *Id.* at 20.  His hands, however, were tied regarding the

career offender enhancement.  Having considered the plea agreement and statements made at the

sentencing hearing, the Court finds that Mr. Ortega satisfactorily fulfilled the plea agreement by

asking the Court to consider a 60 to 262-month sentence because the career offender enhancement

required a higher sentence.  The Court, therefore, finds that the integrity of the plea was not

undermined and recommends that this claim be denied.

## 2.  Prosecutor Allegedly Tampered With Evidence

Next, Defendant claims that the prosecutor in his criminal case tampered with evidence.

[*Doc. 1* at 19].  Defendant states that the coat with the pocket in which the gun was found had fur

around the collar and cuffs and that, while the same coat was presented at Defendant's suppression

hearing, "[l]atter [sic] on at a video deposition the fur around the sleeve was gone[;] it was evident

the cuff of the coat was unrolled making the coat longer/the sleeve of the coat longer."  *Id.*

Defendant states that "[a] motion was filed to throw the coat out because that was  how Defendant

was going to prove his innocence [sic]," and that the "[p]rosecutor did not denie [sic] the claim by

the defendant but simply stated the sleeve can be [r]olled up or down."  Defendant contends that if

the coat had not been altered, he "could have and would have put the coat on at trial and shown that

it in fact cound'nt [sic] have been possessed by the defendant as it would have been to [sic] small."

*Id.*  The Government responds that, had the case gone to trial, Officer Ramos would have been

called to testify that both Defendant and the passenger in the car handled the jacket, and that "[t]he

evidence would have shown that Officer Ramos found the jacket between the front seats of the

-22-

vehicle driven by [Defendant] and that it is the same jacket that [Defendant] asked Officer Ramos to retrieve because he was cold outside the vehicle."  [*Doc. 18* at 19].  Further, the Government states that it would have called the passenger in the car "to testify regarding [Defendant's] efforts to force her to take responsibility for his jacket and the firearm."  *Id.*

The Court finds that this claim has no merit because Defendant fails to provide any support that the prosecution altered the jacket.  Simply because the jacket appeared at a video deposition to have had its fur removed and/or its sleeve unrolled, does not mean that Defendant could not have attempted to show that the jacket was not his had his case gone to trial.  Defendant fails to cite which document contained a motion to "throw the coat out," and the Court is unable to find that motion in the record.  The Court, therefore, finds that these allegations are conclusory and this claim should be denied.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (*pro se* litigant must allege "sufficient facts on which a recognized legal claim could be based," and "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

### 3.  *Prosecutor Allegedly Interfered With Defendant Presenting Issue of Competency*

Defendant next claims that the "[p]rosecutor purposefully hendered [sic] the defendant from presenting issue of mental illness and delusions [a]t the time of plea."  [*Doc. 1* at 21].  Defendant states that he had retained attorney Joe Romero in 2004 and "explained [the] circumstance in complete to Mr. Romero," and that, when Defendant called Mr. Romero one or two months later for an update, Mr. Romero told him that he could not represent him anymore and that the prosecutor was "making him step down."  *Id.*  The Government states that it "never hindered or inhibited [Defendant] in any way in the prosecution of his case an particularly when he entered his guilty plea."  [*Doc. 18* at 19].  The Court finds that this claim is conclusory and without merit.  Defendant fails to provide any support for his allegation that he was kept from presenting the issue of mental

illness at the time of his plea.  Indeed, the issue of Defendant's mental illness at the time of his plea agreement was thoroughly examined by the Court during Defendant's criminal case and resulted in two mental evaluations being ordered and lengthy delays in sentencing Defendant, as discussed previously herein.  The Court recommends that this claim be denied.

### C.  The Court Allegedly Erred by Not Allowing Defendant to Withdraw His Guilty Plea

Finally, Defendant claims that the Court erred in his criminal case "by not allowing [Defendant] to withdraw [his] plea at [his] competency hearing."  [*Doc. 1* at 17].  Defendant states that he should have been allowed to withdraw his plea because the psychologist testified that Defendant "suffers from extreme paranoia and is schizophranic [sic]," and that Defendant "can be competent one moment and not the next moment."  *Id.*  Defendant states that he "lacked complete knowledge of the consequence of accepting the plea" because he was not made aware that he would face a career offender enhancement, so his plea was involuntary.  *Id.* at 17-18.  Defendant further states that the Court should have allowed him to "opt out" of the plea when the prosecutor breached the plea agreement.  *Id.* at 18.  The Government responds that this claim is without merit because the Court did not err in enforcing Defendant's plea agreement.  [*Doc. 18* at 20-21].  The Court agrees and finds that this claim is without merit because the Court did not err in refusing to allow Defendant to withdraw his plea.  The Court has already considered Defendant's claims regarding his mental competency at the time of his plea and the issue of the career offender enhancement of Defendant's sentence, and has found that these claims are without merit.  The Court finds that the Court in Defendant's criminal case did not err in rejecting these arguments as well, and recommends that this claim be denied.

### D.  Motions for Extension of Time and Stay, and Motion for Discovery

Defendant has filed five motions for extensions of time to file supplemental pleadings in this case and for a stay of this case [*Docs. 11, 17, 19, 21,* and *22*], and has filed one motion for discovery [*Doc. 20*].  In his motions for extensions of time to file supplemental pleadings, Defendant states that he has lacked access to either legal materials or other pertinent documents and asks for additional time to supplement his Section 2255 motion.  [*Docs. 11, 17, 19, 21,* and *22*].  In his motion for discovery, Defendant seeks "all investigative work product of the attorney's [sic] signed to represent him in this matter."  [*Doc. 20* at 3].  The Court has found that all of Defendant's claims are without merit and recommends dismissal of his Section 2255 motion.  Because Defendant fails to specify what materials he needs or how he would like to supplement his Section 2255 motion, the Court finds that his motions for extensions of time and to stay are without merit and should be denied.  Moreover, Defendant filed this motion January 12, 2011, and has not filed any supplemental pleadings since that time despite having had adequate time to do so.  In addition, the Court has found that Defendant's claim regarding his counsel's alleged failure to investigate is without merit and finds that the discovery requested by Defendant would not affect that finding, so the Court recommends that Defendant's motion for discovery should be denied as well.

**<u>Conclusion</u>**

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that the claims raised in Mr. Johnson's ***Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1)*** be **DENIED,** that Defendant's motions for extensions of time to file supplemental pleadings, to stay the case, and for discovery [*Docs. 11, 17, 19, 20, 21* and *22*] be **DENIED,** and that Case No. CIV-11-0037 be **DISMISSED with prejudice**.

*Lourdes A. Martinez*

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**